UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LORI HEGE,

       Plaintiff,

v.                          CASE No. 8:08-CV-1424-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

O R D E R

       The plaintiff in this case seeks judicial review of the denial of

her claims for Social Security disability benefits and supplemental security

income payments.[*]  Because the  decision of the Commissioner of Social

Security is supported by substantial evidence and does not contain any

reversible error, the decision will be affirmed.

I.

       The plaintiff, who was forty-four years old at the time of the

administrative hearing and who has an eleventh grade education, as well as

---

     [*]The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 13).

a six-month college course to obtain a real estate license, has worked at various jobs, including deli-clerk, customer service/dispatch, and clerk (Tr. 119). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to a manic depression disorder and anxiety (Tr. 346). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "manic depressive disorder, bipolar disorder, and history of polysubstance abuse in early remission" (Tr. 15). The law judge concluded that these impairments imposed the following restrictions (Tr. 17):

> She is moderately limited in her ability to remember, understand and carry out detailed instructions. The claimant has no significant limitation in her ability to sustain an ordinary routine without special supervision, make simple work-related decisions and work in coordination with or proximity to others without being distracted by them. The claimant has no significant limitation in her ability to interact appropriately with the general public, coworkers or supervisors. She has no significant limitation in her ability to maintain socially appropriate behavior, accept instructions and respond appropriately to criticism from supervisors, and to adhere to basic standards of

neatness and cleanliness. The claimant has no significant limitation in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. The claimant has no more than mild limitations in her ability to maintain attention and concentration. She has no significant limitation in her ability to respond appropriately to changes in the work setting.

The law judge found that, despite these limitations, the plaintiff could return to past relevant work as a deli clerk, order filler, and office clerk (Tr. 25). Consequently, the plaintiff was found to be not disabled (Tr. 26). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the

Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

The plaintiff challenges the law judge's decision on two grounds. The plaintiff first argues that the law judge erred in finding that she could return to past relevant work (Doc. 22, p. 6). Second, the plaintiff contends that the law judge erred because he did not order a consultative examination

to assess the plaintiff's mental impairment. Neither argument warrants a reversal.

A. The law judge found that the plaintiff could return to past work as a deli clerk, order filler, and office clerk (Tr. 25). The plaintiff's challenge fails if there is substantial evidence that the plaintiff could return to any one of these jobs.

The plaintiff contends that the law judge did not accurately consider the duties of her position as a "deli clerk (DOT 316.684-014), which the *Dictionary of Occupational Titles ["DOT"]* more accurately calls a 'Deli Cutter-Slicer'" (Doc. 22, p. 7). The plaintiff contends that she was not a "deli cutter-slicer" because she served customers and the DOT's job description makes no mention of customer service (id.). Instead, the plaintiff argues her past relevant work is "more akin to the position of 'Sales Clerk, Food (DOT 290.477-018)'" (id.). This argument is meritless.

The law judge reasonably found that the "deli cutter-slicer" listing, DOT 316.684-014, constituted past relevant work performed by the plaintiff as a deli-clerk. This listing describes the deli cutter-slicer occupation as follows:

> Cuts delicatessen meats and cheeses, using slicing machine, knives, or other cutters: Places meat or cheese on cutting board and cuts slices to designated thickness, using knives or other hand cutters. Positions and clamps meat or cheese on carriage of slicing machine. Adjusts knob to set machine for desired thickness. Presses button to start motor that moves carriage past rotary blade that slices meats and cheeses. Stacks cut pieces on tray or platter, separating portions with paper. May weigh and wrap sliced food and affix sticker showing price and weight.

The plaintiff described her job as that of a "deli clerk" at Warren's IGA Grocery from July 2002 to March 2003 (Tr. 75). In another form (Tr. 119), the plaintiff similarly referred to her occupation as a "deli-clerk" earning $5.40 an hour (Tr. 119, 125). Moreover, she described her job as "work[ing] in a grocery store deli serving customers" (Tr. 125, 344-45). The plaintiff stated that she used machines, tools and equipment (Tr. 125). There was no technical knowledge or skill, and no writing or need to complete forms (id.).

The plaintiff tries to avoid the application of the DOT description of "deli cutter-slicer" because that job did not mention serving customers. In all likelihood, the task of serving customers involved no more than asking customers at the grocery store deli what they wanted and then handing them the product after she had cut or sliced it. There is nothing

-7-

about the plaintiff's impairments that would prevent her from performing that function.

In all events, the evidence clearly supports the law judge's finding that the plaintiff could perform the job of deli cutter-slicer as that term is performed in the national economy, even if, for some inexplicable reason, she could not carry out the specific job she had performed. See Jackson v. Bowen, 801 F.2d 1291, 1293 (11ᵗʰ Cir. 1986). Thus, at most, serving customers is simply an additional task she had to perform beyond being a deli cutter-slicer. In other words, she has previously performed the duties of deli cutter-slicer (and more), and there is no reason to think that she cannot again carry out the duties of a deli cutter-slicer.

The plaintiff makes the contrived argument that her past work was not a "deli cutter-slicer," but a "Sales Clerk, Food" in accordance with DOT 290.477-018 and that the plaintiff is not able to perform that job because it is a "low-end semi-skilled" position (Doc. 22, pp. 7-8).

Although the two jobs have some of the same tasks, a "Sales Clerk, Food" has more work-related responsibilities than a deli cutter-slicer. A food sales clerk, among other things, prepares food items, receives payment

for food and makes change, may make deliveries to customers' home or place of business, may decorate cakes, and warm food items in the oven according to DOT 290.477-018 (id., Ex. B). Clearly, the law judge reasonably concluded that the plaintiff's past work was that of a deli cutter-slicer, rather than a food sales clerk.

B. The plaintiff also argues that the law judge erred in failing to develop the record fully and adequately or consider the plaintiff's mental impairments when addressing the plaintiff's limitations (Doc. 22, p. 9). The plaintiff provides no explication of the contention that the law judge failed to consider the plaintiff's mental impairments when addressing the plaintiff's mental limitations. In fact, the law judge set forth the plaintiff's mental functional limitations in remarkable detail (Tr. 17). Accordingly, this purported contention is both deemed abandoned and meritless.

The thrust of this argument is that the law judge should have obtained a consultative psychological evaluation. The regulations state that a "consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on the [plaintiff's] claim." 20 C.F.R. 404.1519a(b) and 416.919a(b).

The law judge obviously did not think that the evidence was insufficient to resolve the plaintiff's claim. And, seemingly, neither did plaintiff's counsel, since no request for a consultative evaluation was made either before, or at, the administrative hearing.

As the law judge noted, the plaintiff was diagnosed with a bipolar disorder by Dr. Todd Hawkins (Tr. 312). More pertinently, after the onset date of the plaintiff's alleged disability, Dr. Harbir S. Sekhon, a psychiatrist, diagnosed the plaintiff with a bipolar disorder (Tr. 302). The plaintiff was then followed by Kathryn Fanning, A.R.N.P., at Northside Mental Health Center on a regular basis from 2005 to 2008. The law judge assigned "great weight to the assessments of the claimant's mental functioning by Nurse Fanning, the claimant's primary treating source" (Tr. 25). Significantly, nothing in the record supports findings contrary to Fanning's conclusions.

Moreover, the law judge gave a detailed, reasonable explanation of his review of the medical evidence from Fanning (Tr. 19-25). The law judge fairly and accurately summarized Fanning's notes as follows (Tr. 25):

At the beginning of treatment in May 2005 when the claimant had recently used street drugs, Nurse Fanning assessed the claimant's GAF score as 62. With continued medications and abstinence from substance abuse, the claimant's GAF score was assessed as 79 in October 2007 and it was assessed as 80 in January 2008. During the entire record of treatment, Nurse Fanning never reported a significant decline in the claimant's mental functioning. According to the *American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders*: DSM-IV 34 (4th ed., text revision 2000), a GAF of 61 to 70 represents mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, and has some meaningful interpersonal relationships. A GAF score of 71 through 80 represents no more than slight impairment in social, occupational, or school functioning. These assessments are consistent with the observations and treatment records from Nurse Fanning as well as the claimant's reported activities. The medical evidence of record does not establish a time in which the claimant's mental impairments resulted in disabling mental limitations for a period of at least 12 consecutive months.

The law judge, as indicated, gave great weight to the assessments by Fanning, the plaintiff's treating source (id.). That was reasonable since Fanning had tracked the plaintiff's condition and medications on a regular basis from May 2005 until the last report in January 2008. Her observations

of the plaintiff over this lengthy period of time certainly gave her an excellent opportunity to evaluate the plaintiff. Although Fanning is not what the regulations call an "acceptable medical source," 20 C.F.R. 404.1513(a), 416.913(a), she is an "other source" that may provide evidence to show the severity of the plaintiff's impairments. 20 C.F.R. 404.1513(d)(1), 416.913(d)(1). In light of the evidence from Fanning reflecting the plaintiff's mental status over a period from May 2005 to January 2008, the law judge could reasonably conclude that he had sufficient evidence to resolve the plaintiff's claims.

Furthermore, there is no reason to think that a one-time consultative evaluation would shed any additional light upon the plaintiff's mental status during the period of her alleged disability. This is particularly true since, as of January 23, 2008, the plaintiff had a GAF of 80, which means that, "[i]f any symptoms are present, they are transient and expectable reactions to psychosocial stressors" and reflect "no more than slight impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders, DSM-IV-TR (4th ed. text revision), p. 34.

Furthermore, it is significant that plaintiff's counsel did not request the law judge at the hearing (or before) to obtain a consultative examination. Apparently, counsel did not think one was warranted either.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision, which is supported by substantial evidence and does not contain any reversible error, is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 27th day of July, 2009.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE